IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AMANDA BEEZLEY, Individually, and on Behalf of All Other Similarly Situated, </br></br> Plaintiff, </br></br> v. </br></br> FENIX PARTS, INC., et al., </br></br> Defendants. | No. 1:17-cv-7896 </br></br> Hon. Charles R. Norgle |

## OPINION AND ORDER

Plaintiff Amanda Beezley ("Plaintiff"), individually, and on behalf of all others similarly situated, brings this action against Defendants Fenix Parts, Inc. ("Fenix"), Kent Robertson ("Robertson"), Scott Pettit ("Pettit"), BMO Capital Markets Corp. ("BMO Capital"), Stifel, Nicolaus & Company, Inc. ("Stifel"), BB&T Capital Markets ("BB&T"), and Barrington Research Associates, Inc. ("Barrington Research"), for alleged violations of § 10(b) and § 20(a) of the Securities Exchange Act of 1934, codified at 15 U.S.C. § 78 ("Exchange Act") and § 11 and § 15 of the Securities Act of 1933, codified at 15 U.S.C. § 77 ("Securities Act"). Before the Court is Defendants BMO Capital, Stifel, BB&T, and Barrington Research's (collectively "Underwriter Defendants") motion to dismiss Count I of Plaintiff's Amended Complaint because the applicable statute of limitations has expired. For the reasons stated, the motion is granted.

### I. BACKGROUND

This is a putative federal securities class action. Plaintiffs are all persons and entities who purchased shares of Fenix securities: (1) in Fenix's initial public offering on May 15, 2015 (the "IPO"); and/or (2) on the public market between May 15, 2015 and June 28, 017 (the "Class Period"). Fenix is incorporated in Delaware and headquartered in Westchester, Illinois.

Robertson was the Chief Executive Officer and director of the Company and Pettit was the Chief Financial Officer of Fenix. Underwriter Defendants served as underwriters of the Company's IPO—each received an underwriting discount plus reimbursement for reasonable out-of-pocket expenses.

Fenix was a recycler and reseller of original automotive products and formed by merging eight different companies (the "Founding Companies"). In determining the aggregate consideration to be paid by Fenix, Fenix did not obtain independent valuations, appraisals, or fairness opinions to support the consideration that it agreed to pay for the Founding Companies. Fenix relied solely on Robertson and Pettit to negotiate with the Founding Companies—both of whom were hired by the owners of the Founding Companies to start Fenix. To fund the acquisitions, company officers decided to take Fenix public. Plaintiff alleges that initially Fenix wanted to go public at $10.00 per share, but was forced to open at $8.00 per share due to lack of interest.

Plaintiff alleges that in order to raise investor interest in the IPO, Robertson and Pettit misrepresented to potential investors that Fenix would acquire an additional ten to fifteen companies in the next two years, one to three per quarter. To help acquire ten to fifteen companies and continue as a going concern, Fenix entered into an agreement with BMO Harris Bank N.A., for a proposed $35,000,000 senior secured credit facility ("Credit Facility"). Plaintiff alleges that the value of Fenix's inventory significantly affected Fenix's ability to withdraw under the Credit Facility.

Fenix's offering document and registration statement reported that as of December 31, 2014, the consolidated inventories were valued at $42,190,000 and the goodwill was valued at $58,879,000. Goodwill is an intangible asset which represents the excess of the amount a

2

company pays for its acquisitions over the fair value of the acquired net assets. Fenix allegedly performed goodwill impairment tests annually during the fourth quarter and between annual tests. Goodwill impairment occurs when a reporting unit's goodwill is in excess of its fair value.

Plaintiff alleges that Fenix did not have adequate internal controls or procedures to prepare, document, or review areas of significant judgments and accounting estimates, including: purchase accounting; contingent consideration; potential goodwill impairment; and inventory valuation. Plaintiff argues that as a result of Fenix's lack of adequate internal controls and procedures, it was unable to make an accurate inventory valuation. Plaintiff argues that such inability is evidenced by Fenix's disclosure of $14.88 million loss of value in its inventories within a year of the registration statement. Furthermore, despite the alleged substantial decrease in inventory value, Fenix stated that its goodwill value had increased $24.792 million to $83.671 million over the same time period.

On March 30, 2016, and April 4, 2016, Fenix made a filing with the SEC which Plaintiff admits "partially revealed to the market that Fenix was having liquidity issues with their Credit Facility." Pl.'s Compl. ¶¶ 163-167. On April 15, 2016, Plaintiff admits that, during an Earning Conference Call, Robertson made statement which "partially revealed to investors that Fenix was in violation of the appropriate [generally accepted accounting principles ("GAAP")] and struggling with its internal controls." Id. at ¶ 184. On May 23, 2016, Fenix filed a report with the SEC stating it was unable to timely file its quarterly form due to accounting issues, including a potential goodwill impairment and inventory valuation. One June 28, 2016, Fenix filed its quarterly report for the period ending March 30, 2016, the report disclosed that Fenix was taking a goodwill impairment charge of $43.3 million to reduce the carrying value of goodwill. Plaintiff

3

admits that this disclosure also "partially revealed the truth about Fenix's improper accounting policies and inability to adequately account for goodwill and inventory." Id. at ¶ 199.

On July 11, 2016, Fenix filed a report with the SEC announcing the company dismissed its public accounting firm and replaced them with Crowe Horwath LLP. Plaintiff states this announcement revealed to the market that Fenix was having significant difficulties with its internal controls and evaluation. On August 16, 2016, Fenix filed a quarterly report with the SEC which "partially revealed to investors that Fenix was in violation of the Credit Facility and would no longer be able to borrow under it." Id. at ¶ 217. Finally, on August 23, 2016, Fenix filed a form with the SEC which Plaintiff alleges "partially revealed that Fenix was in breach of covenants in the Credit Facility." Id. at ¶ 220. By August 24, 2016, Fenix's original IPO value of $8.00 per share had decreased to an intra-day low of $4.63—almost half the original value per share.

Subsequently, Plaintiff alleges that the SEC began an investigation into Fenix's change of auditors, the recent goodwill impairment charge, the effectiveness of its internal control over financial reporting, and its inventory valuation methodology. Plaintiff alleges that these events result a violation of Fenix's Credit Facility which created substantial doubt to Fenix's ability to continue as a going concern and on June 29, 2017, Fenix was delisted from NASDAQ. Plaintiff filed her Amended Complaint August 28, 2017, naming the Underwriter Defendants as defendants under Count I. The Underwriter Defendants now move to dismiss Plaintiff's claim, arguing that the claim is barred by the applicable statute of limitations.

4

## II. ANALYSIS

### A. Standard of Review

A motion under Rule 12(b)(6) tests the sufficiency of the complaint under the plausibility standard, Bell Atlantic Corporation v. Twombly, 550 U.S. 544, 570 (2007), not the merits of the suit. Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990) (citation omitted). "[A] plaintiff's claim need not be probable, only plausible: 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'" Indep. Trust Corp. v. Stewart Info. Servs. Corp., 665 F.3d 930, 935 (7th Cir. 2012) (quoting Twombly, 550 U.S. at 556). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' To rise above the 'speculative level' of plausibility, the complaint must make more than '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" Oakland Police & Fire Ret. Sys. v. Mayer Brown, LLP, 861 F.3d 644, 649 (7th Cir. 2017) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

In deciding a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in a plaintiff's complaint, and draws all reasonable inferences in his favor. Burke v. 401 N. Wabash Venture, LLC, 714 F.3d 501, 504 (7th Cir. 2013) (citations omitted). "[A] plaintiff is not required to plead facts in the complaint to anticipate and defeat affirmative defenses. But when a plaintiff's complaint nonetheless sets out all of the elements of an affirmative defense, dismissal under Rule 12(b)(6) is appropriate." Indep. Trust Corp., 665 F.3d at 935.

## B. Inquiry Notice for Determining the Accrual Date of the Limitations Period

Plaintiff argues that Underwriter Defendants' conduct violated § 11 of the Securities Act. "In case any part of the registration statement ... contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading," any purchaser of the security may sue for damages. 15 U.S.C. § 77k(a). The act permits the injured purchaser to sue every underwriter of the particular security. Id. at § 77k(a)(5). Underwriter Defendants respond by arguing that Plaintiff's claim is barred by the applicable statute of limitation. The Securities Act requires that actions for violations of § 11 be "brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence." 15 U.S.C. § 77m.

The parties do not dispute the applicable statute of limitations of one year, rather they disagree on how to determine the date of accrual for the limitations period. Plaintiff argues that the Court should reject "inquiry notice" as the event triggering the applicable statute of limitations, citing Merck & Co. v. Reynolds 559 U.S. 633 (2010). Merck concerned the timeliness of a complaint filed in a private securities fraud action brought under the Exchange Act. Id. at 638. The limitations period for claims brought under the Exchange Act is governed by 28 U.S.C. § 1658(b), which states "a private right of action that involves a claim of fraud, deceit, manipulation, or contrivance in contravention of a regulatory requirement concerning [the Exchange Act], may be brought not later than the earlier of 2 years after the discovery of the facts constituting the violation; or 5 years after such violation." 28 U.S.C. § 1658(b)(1). The Supreme Court rejected "inquiry notice" holding that the two-year time limit in § 1658(b)(1) "begins to run once the plaintiff did discover or a reasonably diligent plaintiff would have

discovered the facts constituting the violation," rather than when a plaintiff has induced sufficient facts to suggest wrongdoing and prompt further inquiry. Merck, 559 at 653. (internal quotations omitted).

The Underwriter Defendants argue that Merck did not reject the "inquiry notice" standard for determining the date of accrual under the Securities Act, instead the rejection was specific to claims under the Exchange Act. The Court agrees.

The Securities Act and Exchange Act are readily distinguishable—under § 11, the purchaser does not need to prove that defendant acted with any intent to deceive or defraud, as he must to establish certain other securities offenses. Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund, 135 S. Ct. 1318, 1323 (2015). Section 11 places a "relatively minimal burden on a plaintiff[;]" whereas § 10(b) of the Exchange act is a "catchall antifraud provision," and places a heavier burden upon the plaintiff to establish a cause of action. Herman & Maclean v. Huddleston, 459 U.S. 375, 382 (1983). "Most significantly, [a § 10(b) plaintiff] must prove that the defendant acted with scienter, i.e., with intent to deceive, manipulate, or defraud." Id.

In Merck, the Court considered the effect that fraud has on discovery and, interrelatedly, the appropriate date of accrual. The Court stated that an exception to the general discovery rule arose in fraud cases because "a defendant's deceptive conduct may prevent a plaintiff from even knowing that he or she has been defrauded." Merck, 559 U.S. at 644. Accordingly, "the law which was designed to prevent fraud could become the means by which it is made successful and secure." Id. The Court reasoned that § 10(b)'s requirement of scienter renders "inquiry notice" unsuited to determine the accrual date. Id. at 649 (stating "[inquiry notice] would … frustrate the very purpose of the discovery rule in [§ 1658(b)]" if in cases involving a claim of fraud, deceit,

or manipulation "the limitations period began to run regardless of whether a plaintiff had discovered any facts suggesting scienter.")

Furthermore, Justice Scalia in his concurrence in <u>Merck,</u> stated that there is good reason for extending actual notice to § 10(b) claims under the Exchange Act but not for claims under the Securities Act. <u>Id.</u> at 657 (Scalia, J., concurring in part and concurring in the judgment). Justice Scalia reasoned that "[t]he elements of § 10(b) claims, which include scienter, are likely more difficult to discover than the elements of claims under § 77k" <u>Id.</u> at 657, 658 (further stating that "determining when the plaintiff should have uncovered an untrue assertion in a registration statement or prospectus is much simpler than assessing when a plaintiff should have learned that the defendant deliberately misled him using a deceptive device covered by § 10(b).") Based on the reasoning provided by the majority and Justice Scalia in <u>Merck,</u> the Court finds that the Supreme Court did not intend to extend the actual notice discovery rule to claims arising under the Securities Act. Accordingly, the Court follows well established Seventh Circuit precedent and uses the inquiry notice standard to determine when the statute of limitations began to run. <u>Whirlpool Fin. Corp. v. GN Holdings</u>, 67 F.3d 605, 609 (7th Cir. 1995). "'Inquiry notice,' … means as soon as the plaintiff discovers facts that while not constituting a violation create enough suspicion of one to induce a diligent person to investigate further and by doing so discover it." <u>McCann v. Hy-Vee, Inc.</u>, 663 F.3d 926, 930 (7th Cir. 2011).

**C. Plaintiff's Inquiry Notice to Fenix's Alleged § 11 Violation**

Plaintiff alleges that there were three predominant misrepresentations made in Fenix's registration statement: (1) over the next two years Fenix would acquire ten to fifteen companies, approximately one to three a quarter, and the sizes of such acquisitions were projected to raise $5 to $10 million in revenue; (2) Fenix's registration statement reported that the consolidated

8

inventories value was $42,190,000; and (3) the goodwill value was $58,879,000. Plaintiff argues that these statements were material misrepresentations and made to artificially inflate the value of Fenix's IPO. Plaintiff filed her Amended Complaint August 28, 2017, thus, the issue before the Court is whether on August 28, 2016, Plaintiff had discovered enough facts—regarding the three alleged misrepresentations—that would have led a reasonable person to investigate whether she might have a claim.

The details of Fenix's financial situation by August 28, 2016, were dramatically different than the one Fenix projected at the IPO. Fenix projected it would acquire one to three companies per quarter with such acquisitions valuing $5 to $10 million in revenue; by August 26, 2016, Fenix had acquired three companies—none in the prior eight months. Additionally, rather than increasing the value of its inventory, the value decreased every quarter—losing $14.88 million in one year. Despite the alleged substantial decrease in inventory value, Fenix stated that its goodwill value had increased $24.792 million over the same time period. As a result of the decrease in inventory valuation and increase in goodwill, Fenix was forced to take an impairment charge of $43.3 million just one year after the IPO. Plaintiff admits that all of these events "partially revealed" Fenix's lack of adequate internal controls and procedures, and its inability to make an accurate inventory or goodwill valuation. Plaintiff also alleges that on August 16 and 23, 2016, Fenix filed a form with the SEC which partially revealed to investors that Fenix was in breach of the Credit Facility which would prevent Fenix from borrowing under it.

In Whirlpool the Seventh Circuit held that dramatic discrepancies between very precise projections made by the defendants and the actual results, were sufficient to give notice to the plaintiffs and "spur them to investigate"—inquiry notice. Whirlpool, 67 F.3d at 610. By August 28, 2016, Plaintiff had substantial knowledge that Fenix was performing significantly under the

projections stated in its registration statement. Moreover, Plaintiff was aware that the inability to borrow under the Credit Facility would further limit Fenix's ability to acquire new business and continue as a going concern. Despite multiple admissions by Plaintiff that Fenix's SEC filings and conference calls began to reveal problems with the projections from the registration statement as early as March 2016, Plaintiff failed to file her Amended Complaint naming underwriter defendants until August 28, 2017. Under an objective reasonable diligence standard, the only reasonable inference from Plaintiff's allegations is that she had inquiry notice on or before August 28, 2016. Accordingly, the Court grants Underwriter Defendants' motion to dismiss because the statute of limitations had run on Plaintiff's claim.

### III. CONCLUSION

In sum, Plaintiff alleges that she continually discovered facts from as early as March 2016 to August 28, 2016, that would have led a reasonable person to investigate whether she might have a claim. Thus, the Complaint shows that Plaintiff had inquiry notice of the alleged misrepresentations and omissions prior to August 28, 2016. Accordingly, Underwriter Defendants' motion to dismiss is granted.

IT IS SO ORDERED.

ENTER:

*Charles Norgle*

CHARLES RONALD NORGLE, Judge
United States District Court

DATE: June 26, 2018