**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| AMANDA BEEZLEY, Individually and on behalf of All Others Similarly Situated | ) ) ) | |
| Plaintiff, | ) ) | No. 17 C 7896 |
| v. | ) ) | Magistrate Judge Jeffrey Cole |
| FENIX PARTS, INC., KENT ROBERTSON, SCOTT PETTIT, BMO CAPITAL MARKETS CORP., STIFEL NICOLAUS & CO., INC., BB&T CAPITAL MARKETS, and BARRINGTON RESEARCH ASSOC, INC., | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

The defendant's Motion for a Protective Order asks for 1) a stay of discovery and withdrawal of all plaintiff's discovery requests, 2) a stay of discovery pending Judge Norgle's ruling on defendants' motion for reconsideration of his denial of defendants' motion to dismiss, and 3) a limitation of discovery, once it begins, to issues of class certification unless and until a class is certified. [Dkt. ## 93, 94].

As all too often occurs in cases like this, the case has gotten off to a shaky and contentious start. The 63-paragraph Complaint was initially filed in the District of New Jersey in January of 2017. Seven months later, the Complaint, now in amended form, had grown to a 130-page, 295-paragraph colossus. In it, the plaintiff claimed venue was proper in the District of New Jersey because defendant, Fenix Parts, Inc., was headquartered in New Jersey, and a significant portion of its business, actions targeted by the Complaint, and subsequent damages, occurred in New Jersey as well. [Dkt. # 25, ¶ 5]. About six weeks later, however, plaintiff had changed her mind and now

claimed that Fenix was headquartered in Illinois and asked that the case be transferred here under 28 U.S.C. § 1404(a). [Dkt. #30]. The case was, indeed, transferred, but the allegation of venue in New Jersey as the headquarters of Fenix remains.

Once the case was here, the Underwriter defendants and the Fenix defendants each filed motions to dismiss. Judge Norgle dismissed Count I against the Underwriter defendants as time-barred, finding that plaintiff had inquiry notice as early as March 2016 [Dkt. # 80, 81, at 8-10], but denied the Fenix defendants' motion to dismiss finding, *inter alia*, that plaintiff's claim against them was not time-barred because it was not clear that plaintiff was sufficiently apprised to be placed on inquiry notice more than one year prior to filing the original Complaint on January 12, 2017. [Dkt. #82, at 2-3]. The Fenix defendants filed a Motion for Reconsideration on August 20, 2018, which is currently pending before the district court, focusing in the main on the statute of limitations issue and inquiry notice. [Dkt #87, at 4-9].

A couple of weeks after that filing, the defendant filed the instant motion for a protective order. As already noted, the defendants complain that plaintiff began propounding discovery requests in advance of any Fed.R.Civ.P. 26(f) conference, that, under the PSLRA, discovery should not proceed until Judge Norgle rules on defendants' motion for reconsideration, and ask that merits-only discovery be tabled until after the court has ruled on class certification. The plaintiff takes issue with every facet of the defendants' motion. Review of the parties' filings shows that the parties cannot, even at this early stage, agree whether or when they had a Rule 26(f) conference, or what they discussed or, at least, the tenor and import of those discussions. That doesn't bode well for the future.

Although a mini-trial would perhaps be necessary to arrive at an accurate portrayal of what really occurred, here is what can be pieced together from the parties' briefs and competing declarations: The parties had a conference call regarding discovery scheduling and timing for litigating class certification on July 24, 2018. The defendants wanted discovery to be bifurcated between merits and class, with merits put off until after the court addressed class certification. The defendants felt that Seventh Circuit precedent favored bifurcation. They wanted plaintiff to submit her motion for class certification in October 2018 – a little more than two months away at the time. They don't want that any more, as their current hope is that the deadline for plaintiff's class certification motion will be 90 days after Judge Norgle rules on the defendants' motion for reconsideration. [Dkt. #98, at 9].

The plaintiff, despite having then spent nine months in this District, may have been not totally familiar with Seventh Circuit case law on class action discovery, telling defendants that "if what Defendants represented was true, Plaintiffs would consider bifurcation." [Dkt. #103, at 3]. Plaintiff apparently did not research the bifurcation issue as employed here until after this phone call. [Dkt. # 103, at 4]. So, the plaintiff wasn't really prepared to participate in the July 24th conference. And if that's the case, it is at least arguable that it wasn't really a proper Rule 26(f) conference. It certainly does not appear to have been meaningful.

In terms of scheduling, plaintiff apparently wanted until February 2019 to file her motion for class certification. According to the defendants, the parties did a little horse trading and arrived at a tentative agreement to the February date for class certification briefing in exchange for bifurcated discovery. [Dkt. #94, at 2]. According to the plaintiff, there was no such exchange and, no matter what, she would demand the February 2019 class certification motion date. [Dkt. # 103, at 3-4].

3

Moreover, having considered controlling law in this District, plaintiff decided she would never agree to bifurcation. [Dkt. # 103, at 4]. Consequently, we have two diametrically opposed positions and no hope of compromise. In a very real sense, as Justice Cardozo said in another context, "the doom of mere sterility was on [a significant aspect of] the [case] from the beginning." *Clark v. United States*, 289 U.S. 1, 11 (1933).

The two sides appeared before Judge Norgle on July 27, 2018. Plaintiff asked the judge for a ruling on bifurcation, but Judge Norgle instructed the sides to meet and talk about the issue – again – and try to reach an agreement. If they could not, Judge Norgle instructed them to each submit their own discovery schedule. [Dkt. #90, at 9]. Apparently contrary to Judge Norgle's instructions, the parties didn't meet and confer on the bifurcation question; instead, they exchanged emails.

Plaintiff then served discovery requests on the defendants on August 15, 2018. Defendants thought this was too soon as the parties hadn't yet completed their Rule 26(f) conference. On the one hand, the defendants had a point as the plaintiff was not even prepared for the initial meeting on July 24th, Judge Norgle had indicated the parties should meet again, as nothing had been accomplished. In the plaintiff's view, there was no hope of the parties agreeing on a schedule or bifurcation, no matter how many times they met. In the end, the parties argued back and forth a little more and, finally, on September 20th, submitted opposing discovery and class certification briefing schedules.

That was envisioned not only by Judge Norgle, but under Fed.R.Civ.P. 26(f)(3), which allows the parties to submit their "views and proposals" on discovery, including when it should be completed and whether it should be conducted in phases. Fed.R.Civ.P. 26(f)(3)(B). In any event, with the parties having submitted their opposing plans, the whole issue about plaintiff propounding

4

discovery early – because no agreement was reached at the conference – has become a moot point. But the dispute over a stay of discovery and bifurcation of discovery remains.

**B.**

District courts have extremely broad discretion to control discovery, which is reviewable for abuse. *Crawford–El v. Britton*, 523 U.S. 574, 598–99 (1998); *King v. Ford Motor Co.*, 872 F.2d 833, 838 (7th Cir. 2017);*Kuttner v. Zaruba*, 819 F.3d 970, 974 (7th Cir. 2016); *Jones v. City of Elkhart, Ind.*, 737 F.3d 1107, 1115 (7th Cir. 2013). Given the "extensive intrusion into the affairs of both litigants and third parties" that is both permissible and common in modern discovery, *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 30 (1984), the Federal Rules of Civil Procedure provide for the use of protective orders, entered "for good cause," to protect litigants and third parties from the "annoyance, embarrassment, oppression, or undue burden or expense" that often attends the discovery process. Fed.R.Civ.P. 26(c)(1); *Bond v. Utreras*, 585 F.3d 1061, 1067 (7th Cir. 2009). And so, the question is whether the defendants have shown "good cause" for a stay of discovery pending Judge Norgle's resolution of their motion for reconsideration – which it may be noted are generally not favored, *Goplin v. WeCONNECT, Inc.*, 893 F.3d 488 (7th Cir. 2018); *Bank of Waunakee v. Rochester Cheese Sales, Inc.,* 906 F.2d 1185, 1191 (7th Cir.1990); Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 4478 (2d ed.2002) – and for bifurcation of discovery, with merits-based discovery waiting until after the resolution of the plaintiff's motion for class certification. We think, the answer is, they have not.

First, there is the defendants' request for a stay of all discovery pending resolution of the defendant's motion for reconsideration. Under the Private Securities Litigation Reform Act, "all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss" a suit

5

governed by the Act. 15 U.S.C. § 78u–4(b)(3)(B); *Am. Bank v. City of Menasha*, 627 F.3d 261, 262 (7th Cir. 2010). As already indicated, Judge Norgle ruled on the defendants' motion to dismiss in July 2018, and defendants filed a motion for reconsideration. That doesn't exactly fit into the category of "any motion to dismiss," but at least one court has stayed discovery while considering a motion for reconsideration. *Powers v. Eichen*, 961 F.Supp. 233, 236 (S.D.Cal.1997). *Powers*, of course, is not "controlling" here. *See* n. 2, *infra*. *See also Blow v. Bijora, Inc.*, 855 F.3d 793, 805 (7th Cir. 2017); *United States v. Glaser*, 14 F.3d 1213, 1216 (7th Cir. 1994). And, while "courts have specifically rejected requests to lift a stay where defendants have filed a second motion to dismiss an Amended Complaint because the stay applies 'regardless of whether the motion is brought initially to dismiss a complaint, or subsequently, in response to an Amended Complaint,'" *Sedona Corp. v. Ladenburg Thalmann*, 2005 WL 2647945, at *3 (S.D.N.Y. 2005), and have refused to lift a stay when an Amended Complaint was met with another motion to dismiss, *Selbst v. McDonald's Corp.*, 2006 WL 566450, at *1 (N.D. Ill. Mar. 1, 2006), the situation here is another matter.

Ideally, if one could crawl into Judge Norgle's mind – which of course we cannot, Posner, Overcoming Law, 276 (1995); *ConFold Pacific, Inc. v. Polaris Ind.*, 433 F.3d 952 (7th Cir. 2006) – and see whether he thinks the defendants' September 24th Motion for Reconsideration is correct, decision would be easy. If he thought the motion well-taken, a stay would be appropriate and save a good deal of effort. *Cf. Burkybile v. Mitsubishi Motors Corp.*, 2006 WL 3191542, at *5 (N.D. Ill. Oct. 18, 2006). But, of course, we cannot; and we ought not guess at what Judge Norgle will do. We do know that he didn't think a stay was appropriate back in July when he was informed of defendants' intention to file a motion for reconsideration and ask for a stay. [Dkt. # 90, at 6 ("Oh,

6

I don't think so . . . The complaint has been tested, so to speak. So as a general proposition, discovery should go forward.")]. Briefing of the motion may have changed his opinion, but it may not, and motions for reconsideration are disfavored and are rarely granted. *Kennedy v. Schneider Elec.*, 893 F.3d 414, 419 (7th Cir. 2018). As things stand, and given the fact that plaintiff could simply appeal an Order from this court granting a stay, there's not much point in granting this portion of the defendants' motion.[1]

That leaves bifurcation of discovery, a determination that rests within the discretion of the trial court and thus is reviewable only for abuse. *See Am.'s Health & Res. Ctr., Ltd. v. Promologics, Inc.*, 2018 WL 3474444, at *5 (N.D. Ill. July 19, 2018); *Ocean Atl. Woodland Corp. v. DRH Cambridge Homes, Inc.*, 2004 WL 609326, at *2 (N.D. Ill. Mar. 23, 2004). As it is a discretionary decision, two decision-makers can, on the same record, theoretically arrive at different results, yet both be upheld on appeal. Indeed, "'[t]he very exercise of discretion means that persons exercising discretion may reach different results from exact duplicates. Assuming each result is within the range of discretion, all are correct in the eyes of the law.'" *McCleskey v. Kemp*, 753 F.2d 877, 891 (5th Cir. 1985), *aff'd, McCleskey v. Kemp*, 481 U.S. 279, 289-290 (1987). *Accord Mejia v. Cook County, Ill.*, 650 F.3d 631, 635 (7th Cir. 2011); *United States v. Banks,* 546 F.3d 507, 508 (7th Cir.2008). *Cf. United States v. Bullion,* 466 F.3d 574, 577 (7th Cir.2006)(Posner, J.) ("The striking of a balance of uncertainties can rarely be deemed unreasonable....").

Thus, guidance from texts such as the Manual for Complex Litigation, while helpful, is not

---

[1] Defendants point out [Dkt. #105, at 5-6] that Judge Norgle also said that the "parties might want to approach full-blown discovery at this juncture at a slower pa[c]e" and that he would "leave it up to [the parties'] competence to see at what speed the discovery should go forward." [Dkt #90, at 7-8]. Obviously, whatever confidence – or hope – Judge Norgle may have had in the parties' willingness to agree was nullified when defendants filed their motion for a protective order.

conclusive. Texts and manuals necessarily look to particular circumstances, and the illustrative cases articulate a handful of nonbinding and non-exclusive factors – with practicality being the overriding goal. *See* Manual for Complex Litigation (Fourth) §§ 11.213; 21.14.

Importantly, Fed.R.Civ.P. 23(c)(1)(A) envisions a certification order at "an early practicable time." Accordingly, perhaps the main or most significant factor courts consider is expediency or whether bifurcated discovery will aid the court in making a timely determination on the class certification motion. *In re Groupon, Inc. §. Litig.*, 2014 WL 12746902, at *2 (N.D. Ill. Feb. 24, 2014); *Reid v. Unilever U.S., Inc.*, 964 F. Supp. 2d 893, 932 (N.D. Ill. 2013); *Harris v. comScore, Inc.*, 2012 WL 686709, at *3 (N.D. Ill. Mar. 2, 2012); *True Health Chiropractic Inc v. McKesson Corp.*, 2015 WL 273188, at *1 (N.D. Cal. Jan. 20, 2015). Under the defendants' proposed schedule, bifurcation of discovery does not provide for much gain in expediency, if any. Assuming six weeks to consider the defendants' motion for reconsideration, the defendants proposal for the filing of a class certification motion would be the first week of February 2019, compared to plaintiff's proposal of February 15, 2019. The difference would only be a matter of days.

Furthermore, under defendants' proposal, the class certification motion would not be fully briefed until the middle of June 2019, while the plaintiff's proposed briefing schedule comes to a close on May 31, 2019. Of course, no judge or magistrate judge would assume that there is no possibility that plaintiff might seek an extension of that schedule. Based on the two sides' proposals, and assuming plaintiff is held to her word, bifurcation of discovery would be useless in terms of getting this case to a resolution of the class certification issue any more quickly.

Another factor that courts consider is judicial economy. *Groupon*, 2014 WL 12746902, at *2; *Harris*, 2012 WL 686709, at *4; *Reid*, 964 F. Supp. 2d at 932; *True Health*, 2015 WL 273188,

8

at *1. In cases that are unlikely to continue if a class is not certified, early merits-based discovery can be a waste of time and effort. *See Manual For Complex Litigation, Fourth,* §21.14; *see also* McLaughlin on Class Actions (Eighth) § 3:10 (2011)("[c]ourts are more likely to decline requests to stay pure merits discovery when the nature of the putative representative's claims suggests that it would continue to prosecute individual claims if certification is denied . . . ."); *Christian v. Generation Mortg. Co.*, No. 12 C 5336, 2014 WL 4494860, at *9 (N.D. Ill. Sept. 12, 2014. *Reid*, 964 F. Supp. 2d at 932; *Harris*, 2012 WL 686709, at *4. That's most often true in cases involving token statutory damages. *See, e.g., Harris*, 2012 WL 686709, at *4. That is not the case here [Dkt. # 90, at 8], and plaintiff gives every indication that denial of certification will not mean the cessation of her individual claim. [Dkt. # 103, at 8]. In this respect, there is nothing to be gained from bifurcation.

A third factor that courts consider is severability, meaning whether class certification and merits issues are closely enmeshed. *Harris*, 2012 WL 686709, at *3; (N.D. Ill. Mar. 2, 2012); *Gray v. First Winthrop Corp.*, 133 F.R.D. 39, 41 (N.D.Cal.1990). This factor also affects judicial economy. The "boundary between a class determination and the merits may not always be easily discernible." *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130, U.A.*, 657 F.2d 890, 895 (7th Cir.1981). As a result, "[d]istinguishing between class certification discovery and merits discovery [can] be a thorny issue . . . ." *Mbazomo v. ETourandTravel, Inc.*, 2017 WL 2346981, at *5 (E.D. Cal. May 30, 2017); *see also New England Carpenters Health & Welfare Fund v. Abbott Labs.*, 2013 WL 690613, at *3–4 ("Here, the Court finds no "good reason" to bifurcate class certification and merits discovery. An initial review of the complaint indicates that merits and class certification issues will likely overlap."); *True Health*, 2015 WL 273188, at *2 ("Typically, however,

9

the two do overlap, and . . . bifurcation could raise a slew of issues as to what discovery relates to the class, as opposed to the named plaintiffs, thereby causing additional litigation regarding the distinction between the two."); *Gusman v. Comcast Corp.*, 298 F.R.D. 592, 595 (S.D.Cal.2014) ("[T]he merits/certification distinction is not always clear. Facts that are relevant to the class determination frequently will overlap with those relevant to the merits of the case.").

From a practical standpoint, discovery is often a pitched battle that can eclipse the cost and difficulty of trial, itself. *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1013 (4th Cir. 1986); *BankDirect Capital Fin., LLC v. Capital Premium Fin., Inc.*, 2017 WL 5890923, at *1 (N.D. Ill. Nov. 29, 2017). Given the history of the case thus far, discovery is likely to be contentious. Indeed, discovery has begun with disputes over such basic matters as to whether a discovery conference was held, or completed, and what the discovery schedule ought to be. The scheduling issue alone has generated 45 pages of briefing, supported with more than 120 pages of exhibits. There is absolutely nothing to suggest the parties wouldn't continue in this vein, with time-consuming disputes arising over whether particular discovery was class- or merits-based. From this perspective, there is nothing to gain in terms of judicial economy by bifurcating discovery.

In the end, the defendants have failed to establish "good cause" for bifurcation of discovery. Indeed, the portion of defendants' brief on the topic – surprisingly, a two -paragraph, superficial gloss on the question – would not even merit consideration under basic Seventh Circuit standards. Indeed, the Seventh Circuit, like other Courts of Appeals, has "repeatedly and consistently held that 'perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived.'" *United States v. Cisneros*, 846 F.3d 972, 978 (7th Cir. 2017). *Accord Blow v. Bijora*, 855 F.3d 793, 805 (7th Cir. 2017); *Silais v. Sessions*, 855 F.3d 736, 746 (7th Cir. 2017); *Quintana v.*

*Adair*, 673 F. App'x 815, 820 (10th Cir. 2016);*United States v. Manjang*, 634 F. App'x 528, 531 (6th Cir. 2015).

In order to establish good cause, "courts have insisted on a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." 8A Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice & Procedure § 2035, at 157–58 (3d ed.2010). Defendants fall short of the mark here. Tellingly, their brief cites only a single, non-binding, district court case on the bifurcation issue. [Dkt. # 94, at 10-11].[2] And, in that case, *Quinn v. Specialized Loan Servicing, LLC*, 321 F.R.D. 324 (N.D.Ill. 2017), the district court *denied* the defendant's motion to bifurcate discovery. Along the way the court even noted, as we do here, "that bifurcating discovery may give rise to disputes over whether a particular discovery request relates to the merits or to class certification." 321 F.R.D. at 327.

For the foregoing reasons, the defendants' Motion for a Protective Order [Dkt. #93] is denied. The court approves the plaintiff's schedule as set out in the parties' Joint Rule 26(f) Report. [Dkt. # 93, at 9-10].

---

[2] "Binding" or "controlling" authority only comes from the Supreme Court or the Court of Appeals in which a given district court sits. "Opinions 'bind' only within a vertical hierarchy."*United States v. Glaser*, 14 F.3d 1213, 1216 (7th Cir. 1994). *See also Alliance to End Repression v. City of Chicago*, 820 F.2d 873, 875 (7th Cir. 1987) ("A decision is *authoritative* when it is binding because of the hierarchy among courts, rather than solely because it is persuasive.")(Emphasis supplied). Even decisions of other district courts in the same district are not "binding," although they may be persuasive. *Van Straaten v. Shell Oil Products Co. LLC*, 678 F.3d 486, 490 (7th Cir. 2012); *Townsel v. DISH Network L.L.C.*, 668 F.3d 967, 970 (7th Cir. 2012); *Alliance to End Repression*, *supra*. In short, district courts in the Northern District of Illinois are obligated to follow applicable holdings of the Supreme Court or the Seventh Circuit. They are not obligated to follow decisions of other district judges from this or any other district.

In any event, the circumstances in *Quinn* were quite different from those here, with the defendant hoping to take only merits-based discovery and challenge plaintiff's claims through an early dispositive motion.

ENTERED: /s/ Jeff Cole
UNITED STATES MAGISTRATE JUDGE

DATE: 11/1/18